IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOHNNY WRIGHT,          )
                        )
    Petitioner,         )
                        )   NO. 2:04-0053
v.                      )   JUDGE HAYNES
                        )
JACK MORGAN, Warden,    )
                        )
    Respondent.         )

**MEMORANDUM**

Petitioner, Johnny Wright, filed this action under 28 U.S.C. § 2254, seeking to set aside his state court conviction for second degree murder for which he received a sentence of twenty-five (25) years. Petitioner's claims are: that the state appellate court lacked the authority to reduce his conviction to second decree murder; that only a jury can determine a second degree murder conviction; and under the evidence, he is actually innocent of second degree murder.

Before the Court is the Respondent's renewed motion to dismiss (Docket Entry No. 22)[1] contending that this action is time barred under 28 U.S.C. § 2244(d)(1)(A), the limitation statute for habeas actions. For the pending motion to dismiss, Petitioner does not present any additional evidence nor a transcript on the trial. Petitioner responds that he is actually innocent and the Sixth Circuit recognizes actual innocence as an exception to the limitations period in Section 2244 (d)(1)(A). Petitioner argues that a jury could not have legitimately reached a guilty verdict on second degree murder because the trial court's instruction on "knowing" was fundamentally flawed

---

[1]The Court denied Respondent's first motion to dismiss (Docket Entry Nos. 8 and 14) without prejudice to renew given the appointment of counsel who was given leave to filed an amended petition. (Docket Entry No. 14). Petitioner's counsel elected not to file an amended petition. (Docket Entry No. 20).

and the state appellate court's only authority in vacating a conviction is to remand for a new trial because there is not any jury verdict, citing Jamison v. State, 220 Tenn. 280, 284-85 (1967). Petitioner also argues that the denial of a jury conviction is a structural error that tolls the federal limitations statute for this action. Petitioner also contends that he sought to appeal the sentence imposed for second degree murder, but his appointed counsel failed to do so.

## A. Review of the State Court Record

January 5, 1996, the Tennessee Court of Criminal Appeals set forth the following facts[2] on his direct appeal:

> The defendant lived with the victim, Terri Sweatman, age fifteen months, and the victim's mother, Sheila Sweatman, age twenty-one, in a trailer provided by the mother's parent. They had been living together for several months. Neither the defendant nor Sheila had a job. Sheila had to quit work to care for the baby. The defendant had two daughters that were in his ex-wife's custody. These daugthers would visit with them in the trailer, but not recently due to Terri's illness. The victim had recently returned from a hospitalization for bronchial pneumonia and a stomach virus. The child was whinny and had some diarrhea. The defendant had been mostly around the trailer with the child for three days before the incident.
>
> On the day of the killing, Sheila was out of the trailer for approximately thirty minutes returning some movies and other items. The defendant remained at the trailer preparing potatoes for a meal and watching the victim. The defendant changed the baby's diaper while the mother was gone. The victim was asleep on the living room floor when the mother left.
>
> When the mother returned to the trailer, she met the defendant carrying the victim down the hall. The child was limp and had blood in the mouth. The defendant handed the child to the mother and indicated he had found the child in the bedroom between the bed and dresser. They took the child to the hospital. On the way the mother noticed that the child's head was swelling, but there was no blood on the outside.
>
> At the hospital, the defendant reported that the child fell out of her bed. After arrest and being read his constitutional rights, the defendant gave three statements as to

---

[2]State appellate court opinion findings constitute factual findings in an action under 28 U.S.C. § 2254. Summer v. Mata, 449 U.S. 539, 546-47 (1981).

2

what happened. First, the defendant stated that while the mother was gone, he changed the baby's diaper and left her in her room. He later discovered the baby lying in the floor with her face down. He picked her up and noticed blood.

When confronted with the medical evidence, the defendant admitted not being truthful and gave a second statement: After changing the baby's diaper, the baby continued crying so he threw her on the bed. She hit the edge of the bed. She bounced off and hit her head on the dresser. She fell to the floor. He held her for a moment until she quit screaming and he put her back on the bed. He returned to the kitchen. When Sheila returned, he discovered the baby on the floor. They took her to the hospital.

Upon further questioning, the defendant gave a third statement, as follows:

I still haven't told you the complete truth. I did other things. After I got mad, I took her to her bedroom and I slung her at the bed. Terri bounced off of the bed and her head hit the dresser and she fell to the floor. I picked her up again and threw her at the bed. The bed does not have a headboard and when I threw Terri this second time, she hit the wall. I picked her up and threw her again and she bounced off of the bed and into the floor. I don't know exactly when she stopped, but Terri quit crying. I left her laying in the floor. I was still mad when I left her in the floor, or I don't know if I was mad, but I just lost it. I didn't know Terri was unconscious until on the way to the hospital when Sheila couldn't get Terri to respond to anything or wake up. I told Sheila I didn't know what happened to Terri. I told her Terri went into the bedroom looking for her and I didn't know what happened.

Agent Scott interrogated the defendant for two and a half hours and stated the defendant became emotional and cried during the interview.

A blood sample provided by the defendant tested negative for drugs or alcohol.

Shelia testified that she was not aware of the defendant ever hitting or abusing her child, Terri.

A forensic pathologist who examined the baby stated that he found four imprints on the baby's face consistent with finger marks from a slap. There was no external bleeding; but there was a large amount of internal bleeding under the scalp at the back of the head. The skull was severely fractured and suffered extensive hemorrhaging across the surface of the brain. He identified three areas of impact on the back of the baby's head and indicated that any of them could have caused death. The blows were made with a broad flat surface and were delivered with great force. In his opinion the child would have to have been forcibly thrown against the wall to cause such injuries; and the injuries could not have resulted from falling off a bed onto a carpeted floor. Studies of children falling from second story windows onto

concrete rarely reveal fractures of the nature inflicted on the baby. The blows most likely occurred in rapid succession.

The pathologist testified that the injuries suffered by the baby were consistent with the story the defendant told under questioning.

State v. Wright, 1996 WL 5847 at **1, 2, 3 (Tenn.Ct.Crim.App. 1996).

Based upon its review of that evidence, the Tennessee Court of Criminal Appeals concluded that:

> The defendant in this case was a high school graduate, who was apparently not under the influence of drugs or alcohol at the time of the offense. He had been with a sick child for several days, and was left alone with the child while the mother ran some errands, and the child was whiny. The child had suffered no previous abuse, and had been well cared for by the defendant in the past.
>
> There was no weapon involved.
>
> The killing occurred while the defendant was alone with the child, and there were no witnesses, and no one to prevent the actions of the defendant.
>
> The child was killed with violent blows to the head delivered with tremendous force by slinging or hitting the child's head. There were no other injuries except the fatal head injuries.
>
> The defendant gave false and differing versions of how the killing took place. His final version was that he was unable to deal with the sick child, and lost it while caring for the child who was sick and crying.
>
> The evidence established that the defendant was in the process of preparing to cook soup for himself and his family prior to the incident, had changed the child's diaper, and that he was bare-footed.
>
> The law of this state provides that once a homicide has been established, it is presumed to be second degree murder. Witt v. State, 46 Tenn. 5, 8 (1968). The state must prove both premeditation and deliberation in order to elevate the offense from second to first degree murder. Bailey v. State, 479 S.W.2d 829, 833 (Tenn.Crim.App.1972).
>
> There is no evidence here that the defendant acted with the premeditation and deliberation necessary for a first degree murder. The proof, both circumstantial and direct, suggests that the defendant acted maliciously towards the victim, in the heat

4

> of passion or anger, but without provocation. As in Lee, the only basis upon which the conviction for first degree murder could be upheld were the multiple blows administered to the victim.
>
> We conclude that there is insufficient evidence in this record to support the jury's findings of the necessary elements of premeditation or deliberation. Therefore, the defendant's conviction of first degree murder cannot stand.
>
> We find that there is evidence to support "knowing" conduct and therefore a second degree murder conviction.
>
> Accordingly, the judgment of conviction is modified to second degree murder. The case is remanded to the trial court for re-sentencing.

Id. at 5. Petitioner did not file an application for permission to appeal in the Tennessee Supreme Court.

Petitioner later filed a state post conviction petition that was denied. Petitioner appealed that order, but later moved to withdraw his appeal. The Tennessee Court of Criminal Appeals granted his motion. (Docket Entry No. 10, Addendum No. 2).

Petitioner concedes that this petition is untimely and § 2244(d), but asserts his actual innocence of second degree murder is an exception to the limitations period.

The Sixth Circuit has held that a credible claim of actual innocence of the offense can toll the AEDPA's limitations period. Souter v. Jones, 395 F.3d 577, 589-90 (6th Cir.2005). The actual innocence doctrine applies in "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v.Carrier, 477 U.S. 478, 496 (1986). The reasoning is that "'[i]n appropriate cases', the principles of comity and finality that inform the concepts of cause and prejudice must yield to the imperative of correcting a fundamentally unjust incarceration,'" Id. at 495 (quoting Engle v. Issac, 456 U.S. 107, 135 (1982)). "The quintessential miscarriage of justice is the execution of a person who is entirely innocent. ...

5

[T]he 'fundamental value determination of our society [is] that is far worse to convict an innocent man than to let a guilty man go free.'" Schlup v. Delo, 513 U.S. 298, 324, 325 (1995) (quoting In re Winship, 397 U.S. 358, 372 (1970) (Harlan, J., concurring)). The Sixth Circuit, however, has questioned whether the actual innocence doctrine applies to non-capital sentences. See Ross v. Berghuis, 417 F.3d 552, 557 (6th Cir. 2005).

Assuming this doctrine applies here, actual innocence doctrine falls into two categories, procedural and substantive. Schlup, 513 U.S. at 314. The substantive actual innocence claim is where the habeas petitioner's trial is error free, but the habeas petitioner presents proof that he is actually innocent of the offense, id., citing Herrera v. Collins, 506 U.S. 390 (1993) or where the petitioner alleges that he is "actually innocent of the death penalty". 513 U.S. at 323, citing Sawyer v. Whitley, 505 U.S. 333, 336, 347 (1992). For this latter claim, there is an "extraordinary" standard of review", id. at 316. The Supreme Court explained that: "[T]he evidence of innocence would have had to be strong enough to make the execution "constitutionally intolerable' *even if* the conviction was a product of a fair trial." Id. (emphasis in the original). The phrase "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

Based upon the Petitioner's challenge to the jury instructions and the Tennessee appellate court's findings, the Court concludes that Petitioner's actual innocence claim is not substantive. As stated earlier, "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. 625. Moreover, "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." Id. at 316. "To be

6

credible, such a claim requires the petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific, trustworthy eyewitness accounts or critical physical evidence- that was not presented at trial." Id. at 324. This "reliable new evidence" must be "so strong that a court cannot have confidence in the outcome of the trial," id. at 316, so that it is "[m]ore likely than not that no reasonable juror would have found [petitioner] guilty beyond a reasonable doubt." Id. at 327. No such showing is presented here.

The second type is the procedural "actual innocence" doctrine that rests upon constitutional claims that are otherwise barred for a procedural default and the lack of a showing of cause and prejudice. Schulp, 513 U.S. at 314. For the procedural actual innocence doctrine, the Supreme Court described a lesser burden of proof as follows:

> Accordingly, we hold that the Carrier "probably resulted" standard rather than the more stringent Sawyer standard must govern the miscarriage of justice inquiry when a petitioner who has been sentenced to death raises a claim of actual innocence to avoid a procedural bar to the consideration of the merits of his constitutional claims.
>
> The Carrier standard requires the habeas petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." 477 U.S., at 496, 106 S.Ct., at 2649-2650. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. The petitioner thus is required to make a stronger showing than that needed to establish prejudice. At the same time, the showing of "more likely than not" imposes a lower burden of proof than the "clear and convincing" standard required under Sawyer. The Carrier standard thus ensures that petitioner's case is truly "extraordinary," McCleskey, 499 U.S., at 494, 111 S.Ct., at 1470, while still providing petitioner a meaningful avenue by which to avoid a manifest injustice.
>
> Carrier requires a petitioner to show that he is "actually innocent." As used in Carrier, actual innocence is closely related to the definition set forth by this Court in Sawyer. To satisfy the Carrier gateway standard, a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.

7

Id. at 326-27 (footnotes omitted).

For the second category of actual innocence, Petitioner argues that he is factually innocent because the trial court's jury instruction was erroneous and the state appellate court lacked the legal authority to reduce his conviction to second degree murder.

As a matter of federal law, the Tenth Circuit has held that a state appellate court can reduce a conviction unless the "lesser offense includes an element that was not required for the jury to convict on the greater offense." Swaim v. Scott, 978 F.2d 1268, 1992 WL 314966 *2 (10th Cir. Oct. 21, 1992) (where first degree murder with each sentence reduced to second degree murder and sentence of ten (10) years to life). The reasoning is that if the elements of the lesser offense are part of the greater offense, the jury verdict also found the elements of the lesser offense beyond a reasonable doubt and there is not a Sixth Amendment violation. Id. at 1 (citing and quoting Franks v. Alford, 820 F.2d 345, 347 (10th Cir. 1987).

Here, the Tennessee appellate court found that the evidence clearly established that the Defendant acted knowingly, another element embodied in the jury's finding of first degree murder. With the jury's finding, all elements of second degree murder are within the jury's prior verdict of first degree murder. The Tennessee Court of Criminal Appeals remanded Petitioner's action for resentencing. As a matter of state law, Petitioner misinterprets Johnson v. State, 220 Tenn. 280, 284-85 (1967) that requires a remand only where the punishment or sentence exceeds the lesser offense. An excessive sentence is not present here.

Aside from his allegations that his counsel did not pursue his direct appeal, Petitioner decided to abandon his post-conviction appeal in which he could have presented his claims. This conduct is inconsistent with his insistence on tolling. The Court concludes that Petitioner's

8

procedural actual innocence claim lacks merit.

Accordingly, the Respondent's renewed motion to dismiss should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 24th day of September, 2007.

WILLIAM J. HAYNES, JR.
United States District Judge